UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

RANDALL L. BOSTIC,                )
                                  )
           Petitioner,            )
                                  )
v.                                )      Nos.:  1:11-cv-158;1:09-cr-162
                                  )      *Judge Curtis L. Collier*
UNITED STATES OF AMERICA,         )
                                  )
           Respondent.            )

## <u>MEMORANDUM OPINION</u>

Acting *pro se*, federal inmate Randall L. Bostic ("petitioner" or "Bostic") brings two motions, the first of which is a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255, (Court File No. 25), and the second, a motion for appointment of counsel to appeal issues "not known at the time of sentencing," (Court File No. 29).[1] Because it is easily resolved, the second motion will be discussed at the outset.

The Court sees nothing from which petitioner could possibly carry a timely appeal to the United States Court of Appeals for the Sixth Circuit, as the judgment in his criminal case was entered on July 13, 2010, (Court File No. 23), and as no other order (save the one directing the United States to respond to this § 2255 motion) has been entered since that time.

Accordingly, Bostic's motion for counsel to represent him on appeal is **DENIED,** (Court File No. 29), as premature.

The United States has filed a response in opposition to the § 2255 motion to vacate,

---

[1]    All citations to the record refer to petitioner's criminal file.

which is supported by the affidavit of Rita LaLumia, the attorney who served as Bostic's trial counsel, (Court File Nos. 28 and 28-1). Petitioner has replied to the United States' response and has submitted what he has entitled an "Affidavit," which, presumably, has been offered for the purpose of countering Ms. LaLumia's affidavit, (Court File No. 30 at 11). For the reasons which follow, petitioner's § 2255 motion will be **DENIED.**

## I. Procedural Background

On October 14, 2009, the Grand Jury charged Bostic in a six-count indictment with commission of three drug-related offenses and three firearms offenses, (Court File No. 1). The government later filed a notice, under 28 U.S.C. § 851, stating its intent to use petitioner's prior felony drug convictions to enhance his sentence, (Court File No. 12). Thereafter, petitioner pleaded guilty to being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1), (Count one); to an attempt to manufacture methamphetamine, which violates 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C), (Count two); and to possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 9242(c)(1)(A), (Count 5).

For these offenses, petitioner received, on July 13, 2010, a 262-month total term of confinement and a 6-year term of supervised release, (Court File No. 23). Bostic did not file a direct appeal to the Sixth Circuit, but instead brought this timely § 2255 motion to vacate on June 7, 2011.

## II. Standard of Review

Under 28 U. S. C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence, if he claims the sentence was imposed in violation of the Constitution or laws of the United States; the court lacked jurisdiction to impose the sentence; or the sentence is in excess of the maximum authorized by law, or is

2

otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255 a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

Petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Under Rule 8 of the Rules Governing Section 2255 Proceedings, a court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If the motion to vacate and the other documents show conclusively the petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court sees no need for an evidentiary hearing in the instant case.

### III. Factual Background

The stipulated facts underlying Bostic's convictions were contained in his signed plea agreement, (Court File No. 15). He confirmed those facts were true and accurate at his rearraignment hearing before U.S. Magistrate Judge Susan K. Lee, (Court File No. 27, Rearraignment Hr'g Tr. at 22-23).

On January 13, 2009, members of the Meigs County, Tennessee Sheriff's Office and the 10th Judicial Drug Task Force executed a search warrant at petitioner's residence. He was

home when the warrant was executed and was carrying, on his person, a substance which laboratory tests later revealed to be 1.9 grams of methamphetamine. During the search of the home, agents uncovered an active methamphetamine lab; a police scanner; methamphetamine pipes; a book or print-out titled, "Secrets of Meth Manufacturing"; "pill wash";[2] pseudoephedrine; iodine; red phosphorous; and other items typically connected to meth labs. Also discovered were ten firearms, including an illegal short-barreled shotgun; two other shotguns; a revolver; a semi-automatic pistol; and five rifles.

Agents informed him of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 1626, 16 L.Ed.2d 694 (1966), which he waived. Though petitioner declined to give a written statement, he mentioned, during his oral statement, his son lived with him and he [petitioner] admitted "everything the police found belonged to" him, including the firearms located on a gun rack in the bedroom. When asked whether he knew it was illegal to possess firearms, Bostic responded: "[Y]eah, I know, but a man's got a right to protect his self [sic]." When questioned about several packages of organic iodine discovered during the search, Bostic stated someone had sold him organic iodine to use in manufacturing methamphetamine, but he refused to identify his source, divulging only the location where the person obtained the iodine as "around Knoxville." Petitioner acknowledged he had been convicted previously of felony offenses involving methamphetamine.

## IV. Discussion

In his preprinted form § 2255 motion, petitioner offers two main claims of ineffective assistance, each with sub-parts. The motion is confusingly drafted, but the Court will address

---

[2] A "pill wash" is created by shaking pseudoephedrine pill material together with a solvent in a vessel as a means to separate the pseudoephedrine from other substances in the pill. *See Lindsey v. Cain*, 2011 WL 3861344, *7 (E.D.La. July 8, 2011).

each claim which can be discerned from petitioner's scattered approach to his attorney's purported failings.

## A. The Controlling Law

Claims of ineffective assistance arise from the guarantee in the Sixth Amendment, which reads, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

*Id*. As with any other claim under § 2255, a movant bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*'s test, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A petitioner asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). There is a strong presumption counsel's

5

conduct was within the wide range of reasonable professional assistance.  *Strickland*, 466 U.S. at 689.

When considering *Strickland*'s second prong, in the context of a guilty plea, the movant must show a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Moss v. United States*, 323 F.3d 445, 454-55 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694). To demonstrate a reasonable probability he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995) ("[A] defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."), *cert. denied*, 516 U.S. 1058 (1996).

The standard by which a court reviews counsel's performance is highly deferential, *Strickland*, 466 U.S. at 689, and  counsel is constitutionally  ineffective only if a performance below professional standards caused the defendant to lose what he  "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).  While both prongs must be established in order to meet a petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Strickland*, 466 U.S.at 697.  A petitioner alleging ineffective assistance of counsel bears a heavy burden of proof. *Pough*, 442 F.3d at 966.

### B.  The Claims

Petitioner's filings are disjointed, disorganized and confusing.   The two numbered

claims of ineffective assistance contained the § 2255 motion do not correspond with the five claims in the accompanying brief, which have been labeled "Arguments." Not only do the contentions encompassed in the "Arguments" not correspond with the claims asserted in the motion, but the assertions offered in certain sections of the brief overlap and iterate arguments presented in other sections. New claims have been raised and some have been inserted in the midst of arguments addressing a totally different claim. Some of these claims are raised only in passing and lack any factual underpinnings. Of necessity, the Court has renumbered the claims, but will address each claim which can be discerned from Bostic's submissions.

What the Court will not do is address new claims offered in Bostic's reply to the United States' response which do not relate back to previous claims in his earlier filings, (Court File No. 30), because such newly-raised claims are barred by the one-year statute of limitations in 28 U.S.C. § 2255(f). *See Day v. McDonough*, 547 U.S. 198, 126 S.Ct. 1675 (2006) (district court may *sua sponte* dismiss a petition as untimely); *Mayle v. Felix*, 545 U.S. 644, 650, 125 S.Ct. 2562, 2566 (2005) ("An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."); *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) ("Any attempt to raise a new claim for relief in a Rule 15 motion to amend pleadings is subject to AEDPA's one-year statute of limitations.").

1. Burden of Proof & Differences Between §§ 922(g) & 924(c) Offenses [Ground One, § 2255 motion]

In the motion to vacate, petitioner asserts he was not made aware of the government's burden of proof regarding the essential elements of the § 922(g)(1) offense (a felon in possession), nor advised as to the difference between that offense and the § 924(c) offense

7

(possessing a firearm in furtherance of drug trafficking). Bostic offers no facts to support this claim, but refers the Court to his attached brief to ascertain the factual allegations underlying his claim, (Court File No. 25, § 2255 motion at 4).

After examining the brief, the Court can locate no factual development relative to this claim. The lack of details to flesh out this claim is contrary to Rule 2 of the Governing Rules § 2255 Motions, which requires a motion to "specify all grounds for relief available to the moving party" and "state the facts supporting each ground." A petition which fails to state the supporting facts is legally insufficient on its face and may be dismissed. *McFarland v. Scott*, 512 U.S. 849, 856 (1994).

In addition, Bostic does not contend he would have not have pleaded guilty, but would have insisted on standing trial, had he been advised as to the burden of proof on each element of the firearms charges and of the differences between the two firearms counts. Thus, petitioner has not shown, much less alleged, he sustained any prejudice from counsel's purported errors. The omission of any claim of prejudice ensuing from counsel's alleged shortcomings also is sufficient to justify a dismissal of this ineffective assistance claim. *Strickland*, 466 U.S. at 697.

But even if the claim were sufficiently pled, the record shows petitioner knew, before he pleaded guilty, the elements of the offenses; who bore the burden of proof on each element; and what measure of proof was necessary to convict him because the U.S. Magistrate Judge advised him of all these things during the plea-taking proceedings, (Court File No. 27, Rearraignment H'rg Tr. at 14-16). During the rearraignment hearing, Judge Lee informed petitioner he was giving up certain rights, one of which was "the right to require the United States to prove [him] guilty beyond a reasonable doubt," and he indicated he understood the

right he was forfeiting by pleading guilty, (*Id.* at 7-8).

That judicial officer painstakingly advised petitioner of each element of the firearms offenses, [*Id.* at 14-16], and petitioner answered affirmatively when asked whether he understood as to what he was pleading guilty, (*Id.* at 16). While advising him of the elements, Judge Lee told Bostic the United States bore the burden of proving each element beyond a reasonable doubt, and he indicated he understood this advice as well, (*Id.*).

"Where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to the court's inquiry." *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir.1993), *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986). This Court scrupulously followed the Rule 11 procedure and Bostic is bound by his sworn statements he made in response to the Court's inquiry under Rule 11.

Therefore, these claims are flatly and clearly contradicted by the record and, thus, lack merit.

2. <u>Misleading Advice Concerning the Plea Agreement, [Ground two, § 2255 motion; Argument IV, Petr's Br.]</u>

In this claim, Bostic contents counsel misled him into believing he was pleading guilty to one gun count and one drug count (Counts one - two), with the four remaining counts (Counts three-six) to be dismissed. Petitioner's belief in counsel's advice was derived from the contents of the PSR, specifically paragraph 24, which stated, "the enhancement is not applied," and paragraph 29, which reads: "18 USC 924(c) is **N/A**," (Court File No. 25, § 2255 motion at 5). In "IV Argument" in his brief, Bostic characterizes this alleged error as counsel's failure "to adequately communicate a plea bargain" and "wrong decision [to] advi[s]e [him] to plead guilty to Count (5) of the indictment[s,]" (Court File No. 25-1, Petr's Br. at 10).

9

These contentions, on their face, are internally inconsistent. The allegation involving counsel's "wrong decision" to advise Bostic to plead guilty to Count five is contradictory to his allegation that counsel misled him into believing four counts, including Count (5), would be dismissed in exchange for his guilty pleas. Petitioner cannot have it both ways: Either counsel misled him into thinking Count five would be dismissed or she advised him to plead guilty to Count five.

Even if the allegations supporting this claims were in harmony, Judge Lee's colloquy with Bostic would have rectified any misleading advice counsel gave her client concerning the number of counts to which he was pleading. After telling Bostic "to listen carefully … because this is what you're pleading guilty to, these counts of the indictment," (Court File No. 27, Rearraignment Tr. at 13), each of the three counts charged in the indictment to which he was pleading guilty was read verbatim to him; the elements of each count were explained to him; and, when asked if he understood to what he was pleading guilty, he answered, "Yes, ma'am," (*Id*. at 13-16).

Furthermore, when questioned as to the existence of "any agreement that other charges will be dismissed … pursuant to the plea agreement," the attorney for the government responded it had agreed to dismiss "Counts 3, 4, and 6," but the response patently did not include Count 5 among the counts slated to be dismissed, (*Id*. at 9-10). Also, during the hearing, Bostic acknowledged he had signed the plea agreement; he had had an opportunity to read and discuss it with counsel before signing it; all understandings he had with the government were contained within the plea agreement; and no one had promised or assured him of anything not contained in the plea agreement to persuade him to accept it, [*Id*. at 8-9].

This examination of the record provides no support for his claim of ineffective assistance,

and, indeed, the record clearly refutes it. As mentioned earlier, Bostic is bound by the sworn statements he made in response to the Court's Rule 11 inquiry. Moreover, the contents of paragraphs 24 and 29 in the PSR could not have influenced petitioner to plead guilty, notwithstanding counsel's alleged incorrect advice, because, as respondent correctly points out, the PSR did not even exist at the time Bostic entered his pleas. This claim has no merit.

### 3. Failure to Object to an Incorrect Sentencing Guideline Range [Argument I, Petr's Br.]

In his third claim, petitioner maintains that, in the PSR, his offense level was found to be 31 and his criminal history category VI, which actually results in a sentencing guideline range of 188 to 235 months, not a range of 262 to 327 months, as the Court erroneously stated at his sentencing hearing. This alleged misstatement of the guideline range was allowed to stand, without objection by counsel. Petitioner contends his 262-month sentence was based on this incorrect guideline range; therefore, had counsel objected at this point, the result would have been different, so he posits.

Petitioner either misreads or misinterprets the sentencing guidelines or his PSR. As the United States points out in its response, the "Career Offender" guideline provisions, which is applicable to defendants who are convicted of certain offenses, among them § 924(c) offenses, specifies the applicable guideline range to be from 262 to 327 months, *see* USSG § 4B1.1(c)(3), without regard to the Sentencing Table in USSG § 5A. Because Bostic was convicted, in Count five, of a § 924(c) offense, specifically of the possession of a firearm in furtherance of drug trafficking, and because he received a 3-level reduction for acceptance of responsibility under USSG § 3E1.1, his guideline range was 262 to 327 months imprisonment.

Since Petitioner's guideline sentencing range was drawn from the Career Offender Table

11

for § 924(c) Offenders in § 4B1.1(c)(3), *see* PSR, ¶ 30, not the Sentencing Table in § 5A, his guideline range was accurately calculated to be 262 to 327 months, and counsel's alleged misstep in failing to object to what was a true statement of the guideline range did not constitute a deficient performance and did not cause petitioner prejudice. Absent a showing of both cause and prejudice, counsel did not furnish petitioner with ineffective assistance, and no relief is warranted with respect to this claim.

### 4. Failure to Object to Qualifying Offenses for Career Criminal Enhancement [Arguments I and V, Petr's Br.]

In this claim, Bostic asserts that, though the offenses for which he received the career offender enhancement and for which he received a sentence of probation did not qualify him for career offender status, counsel failed to object to the use of those convictions. Indeed, according to petitioner, the record shows he did not read his PSR because he had never seen it until the date of his sentencing.

Petitioner takes the position that because he was given a sentence of probation for those convictions, they did not constitute "serious drug offenses" within the meaning of the Controlled Substance Act, 21 U.S.C. § 801 *et seq.*[3] "A sentence of probation does not constitute a term of imprisonment," so he asserts, (Court File No. 25-1, Petr's Br. at 7).

United States Sentencing Guidelines § 4B1.1 provides the criteria for determining whether a defendant qualifies as a career offender:

---

[3] As respondent mentions, petitioner has confused the term, "serious drug offense," used in the Armed Career Criminal Act, 18 U.S.C. § 924(e), with the term, "controlled substance offense," used in the career offender enhancement provision in the sentencing guidelines. *See* USSG § 4B1.1(a). Bostic was determined to be a career offender, not an armed career criminal. Also, to bolster his argument that he was not a career offender, petitioner has cited cases involving immigration-related offenses, although neither his state nor federal convictions fell within that category of offenses. The cited cases simply are inapposite to any issue in Bostic's case. Likewise, he has attached to his reply an excerpt from a slip copy of *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), a case involving North Carolina's structured sentencing scheme. Petitioner's convictions were based on Tennessee criminal sentencing statutes, which are dissimilar to its sister state's criminal sentencing apparatus. Put simply, *Simmons* is not relevant and does not support petitioner's position.

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG 4B1.1(a).  As used in this section, the term "two prior felony convictions" means:

(1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense . . ., and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provision of § 4A1.1(a), (b), or (c).

USSG § 4B1.2(c).  A "controlled substance offense" is defined, in relevant part, as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year that prohibits the manufacture … of a controlled substance … or the possession of a controlled substance …with intent to manufacture, import, export, distribute, or dispense."

According to the PSR, petitioner qualified for career offender classification based on his prior felony drug convictions, two of which were from the Criminal Court for Meigs County, Tennessee and both of which were convictions for manufacturing methamphetamine.  One judgment of conviction was entered on August 17, 2005, and one on December 20, 2006.

Petitioner's conduct violated Tenn. Code Ann. § 39-17-417(a) which provides: "It is an offense for a defendant to knowingly manufacture a controlled substance. . . ."  If the controlled substance is methamphetamine of a quantity of less than .5 grams, the offense is Class C felony, *see* Tenn. Code. Ann. § 39-17-417(c)(2)(A), and is punishable by a sentence of from three to six years, for a standard Range I offender, such as petitioner, (Court File No. 25-2, Attachments at 3; Dec. 20, 2006 Judgment, copy in Court File).  *See* Tenn. Code. Ann. § 40-35-101 (Sentencing Grid).  For these offenses, petitioner received two three-year sentences, both suspended on probation, (*Id*.).

Bostic also had a Meigs County conviction for possession with intent to sell more than

½ ounce of marijuana, which was entered on December 20, 2006, at the same time as his second conviction for manufacturing methamphetamine. This conduct violated the fourth subsection of Tenn. Code Ann. § 39-17-417(a), which makes "the possession of a controlled substance …with intent to manufacture, import, export, distribute, or dispense" a criminal act. *See* Tenn. Code Ann. § 39-17-417(a)(4). The violation of this subsection, which involves marijuana in an amount of not less than ½ ounce or more than 10 pounds, is a Class E felony, *see* Tenn. Code § 39-17-417(g)(1), which carries a penalty of from one year to two years, for a standard Range I offender, like petitioner. *See* Tenn. Code. Ann. § 40-35-101 (Sentencing Grid).[4]

Undisputedly, petitioner met the first two criteria for career offender classification, since he was at least eighteen years old when the Meigs County convictions were entered and since one of the federal convictions was a felony controlled-substance offense involving methamphetamine. Regarding the third criteria (i.e., whether he had two prior felony convictions for controlled substance offenses), petitioner was asked by the Court at the sentencing hearing whether he understood he had those prior convictions on his record, and he answered "Yes, sir," (Court File No. 24, Sentencing Hr'g Tr. at 8). When the Court inquired as to whether he denied the convictions, he responded," No, sir," [*Id.*]. Bostic acknowledged these convictions, though the Court told him he could not thereafter challenge them, and he therefore properly was found to be a career offender.

This is so even though petitioner was granted probation for those Meigs County felony

---

[4] Under § 4A1.2, prior convictions are to be treated as one where "the sentences resulted from offenses contained in the same charging instrument" or where "the sentences were imposed on the same day." USSG § 4A1.2(a)(2). Because petitioner's sentences for his 2006 Meigs County methamphetamine and marijuana convictions resulted from the same seven-count indictment and were imposed on the same day, to wit, on December 20, 2006, they counted as one predicate offense for career offender purposes. *See United States v. Baker*, 559 F.3d 443, 450-51 (6th Cir. 2009).

drug convictions. *United States v. McGhee*, 2005 WL 3304107, 161 Fed. Appx. 441 (6th Cir. Dec. 6, 2005), a case cited by respondent, is precisely on point. As the Sixth Circuit explained, "the actual sentence is not determinative; rather, it is potential exposure that determines whether a conviction qualifies as a prior felony conviction for career offender purposes." *Id.*, 2005 WL 3304107 at 7 (citing to USSG § 2K2.1, comment. (n.5)). *See United States v. Bridgeforth*, 441 F.3d 864, 872 (9th Cir. 2006) ("It is true that the actual sentence imposed is irrelevant to whether a crime is a felony under the career offender enhancement; the crime need only be punishable by a imprisonment for more than one year."); *Lowdermilk v. United States*, 2005 WL 3560640, at *5 (E.D.Tenn. Dec. 28, 2005) ("Although Petitioner's sentence was suspended, it still can be used for purposes of determining whether Petitioner is a career offender.") (citing USSG § 4B1.2, comment. (n.1)).

Because the Court properly considered the prior felony drug convictions as qualifying predicate convictions for career offender status, Bostic cannot show any prejudice resulted from counsel's failure to raise the issue at sentencing.

### 5. Failure to File an Appeal [Argument III, Petr's Br.]

In this claim, Bostic asserts his attorney did not file a notice of appeal. Petitioner maintains he asked counsel at his sentencing to file an appeal, or at least, he understood a notice of appeal would be filed based on a statement she made at the sentencing hearing. The statement to which petitioner refers was made when counsel was asked whether there were any objections to his sentence, to which she purportedly explained that office policy required her to raise and preserve the issue of the substantive and procedural reasonableness of his sentence and stated: "… so therefore I am raising that objection," (Court File No. 24, Sent. Hr'g Tr. at 11). Bostic points out he retained, in his plea agreement, the right to file an appeal of a sentence above the

guideline range and maintains he would have appealed, but for counsel's deficient conduct.

Both components of the *Strickland* test apply where the asserted attorney error is the failure to file an appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In assessing the claimed error in light of the deficient-performance prong of the *Strickland* standard, the Supreme Court has instructed:

> "We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *See Rodriquez v. United States,* 395 U.S. 327, 89 S.Ct. 1715,23 L.Ed.2d 340 (1969); *cf. Peguero v. United States,* 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit"). This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes."

*Id.* Thus, an attorney who ignores his client's explicit direction to file an appeal, without more, has rendered an inferior and deficient performance. The Supreme Court then turned to the test for prejudice, observing:

> "According to respondent, counsel's deficient performance deprived him of a notice of appeal and, hence, an appeal altogether. Assuming those allegations are true, counsel's deficient performance has deprived respondent of more than a fair judicial proceeding; that deficiency deprived respondent of the appellate proceeding altogether. In [certain prior cases], we held that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because the adversary process itself has been rendered presumptively unreliable.  The even more serious denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, similarly demands a presumption of prejudice. Put simply, we cannot accord any presumption of reliability' to judicial proceedings that never took place."

*Id.* at 483 (all internal citations, quotation marks, and brackets omitted).

Thereafter, the Supreme Court held "that when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.* at 484; *accord Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir.1998) (finding counsel's failure to file a direct appeal, when specifically requested, establishes prejudice). Even absent an express request, an attorney's failure to consult with a defendant about an appeal where he has a constitutionally-imposed duty to consult constitutes a deficient performance. *Roe*, 528 U.S. at 478-81. Where counsel's deficient performance deprives a defendant of an appeal which he otherwise would have taken, there exists actual prejudice. *Id.* at 484.

As noted, the United States has submitted the affidavit of Rita LaLumia, Bostic's trial attorney, (Court File No. 28, Attachment 1), in which she avers she discussed with petitioner his right to appeal immediately following the imposition of his sentence and he indicated he did not wish to appeal his sentence. Ms. LaLumia further avers that, at no time during the fourteen-day period after sentencing, when Bostic would have been eligible to file a direct appeal, did he contact her and request an appeal be filed on his behalf, [*Id.*].

Appended to Bostic's reply to the United States' response is a document entitled "Affidavit," (Court File No. 30, "Affidavit" at 11). In this document, petitioner alleges he turned to counsel after she made the objection and told her he hoped "that me[an]t we w[ere] going to [a]ppeal because [he] wanted [a]n [a]ppeal," [*Id.*]. Counsel looked at him then turned away, and the U.S. Marshals proceeded to escort him from the courtroom. Bostic further alleges counsel did not discuss an appeal or his right to an appeal. Still, petitioner assumed she was

going to appeal, though he acknowledges he "never talked to her," [*Id*.]. Furthermore, according to petitioner, his mother tried more than once to contact counsel but was told she no longer worked for the Federal Defender Services.

There are several problems with this self-styled "Affidavit." While petitioner alleges he was "duty" sworn, obviously intending to state he was "duly" sworn, the document was not notarized and does not otherwise show he was administered an oath by an authorized person. Nor does petitioner's "Affidavit" comport with the requirements for an "unsworn declaration . . . under penalty of perjury" pursuant to 28 U.S.C. § 1746. But even if the Court accredited his "Affidavit," petitioner has not stated he actually requested or instructed that an appeal be filed. All he has alleged in this document is that he told counsel he hoped her objection meant they would appeal and he wanted an appeal, whereas, in Ms. LaLumia's sworn affidavit, she states petitioner indicated he did not wish to appeal and did not contact her within the 14-day time allotted for filing a notice of appeal and request an appeal be taken on his behalf.

In short, neither affidavit shows petitioner explicitly requested counsel to file an appeal.

The "failure to perfect a direct appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment." *Ludwig*, 162 F.3d 459. However, "a defendant's actual 'request' is still a critical element in the Sixth Amendment Analysis. The Constitution does not require lawyers to advise their clients of the right to appeal." *Id*.; *see also Campbell v. United States*, 686 F.3d 353, 360 (6th Cir. 2012) (determining whether petitioner has given "express instructions to proceed with an appeal" is a pivotal factual issue in resolving the claim); *Regalado v. United States,* 334 F.3d 520, 524-26 (6th Cir. 2003) (failure to file an appeal is not ineffective assistance of counsel where the attorney was not specifically instructed so to do).

18

As to whether counsel consulted with petitioner concerning his right to file an appeal, the Court **FINDS** Ms. LaLumia's testimony on that issue to be credible and does not credit Bostic's unsworn allegation to the contrary, as contained in his "Affidavit."

Because petitioner has not established his attorney provided constitutionally ineffective assistance by failing to file a notice of appeal, this claim lacks merit.

### 6. Failure to Make an Argument against Double Counting [Argument IV, Petr's Br.]

In his brief, Bostic alleges counsel gave him ineffective assistance by failing to raise an issue with regard to double counting. Petitioner directs the Court's attention to parts of his PSR, i.e., to ¶¶ 18-21, which he claims evinces that he was twice enhanced, presumably for firearms. Petitioner alleges that, in the PSR, his base offense level of 26 for the § 922(g) offense (a felon in possession of a firearm), was increased by 3 levels because the offense involved eight or more firearms. The PSR stated, referencing USSG §2K2.1(b)(6) and § 2K2.4, Application Note 4, a four-level increase for possessing the firearm in connection with another felony offense would not be applied.

Yet, despite this disclaimer as to the applicability of any further enhancements for possessing a firearm in connection with another felony offense and despite having being subjected to a 3-level firearms enhancement on the felon-in-possession offense, petitioner maintains his sentence was again enhanced under § 4B1.1(c)(3) to an offense level of 34, less a three-level reduction for acceptance of responsibility, resulting ultimately in an offense level of 31.

Petitioner has a conceptual misunderstanding of the PSR. His comparisons are inapt because he is confusing sentencing computations tied to his felon-in-possession offense with the calculations called for in the career offender provisions in the sentencing guidelines. As

19

stated earlier in this opinion, petitioner's sentence was driven, not by his § 922(g) offense, but by his career criminal classification, including his § 924(c)(1)(A) offense.[5]  The offense to which was attached the offense level of 34, reduced by 3 for accepting responsibility, resulting in an ultimate offense level of 31, was the methamphetamine offense, not the felon-in-possession offense.

"[D]ouble counting occurs when precisely the same aspect of the defendant's conduct factors into his sentence in two separate ways." *United States v. Battaglia*, 624 F.3d 348 (6th Cir. 2010) (quoting *United States v. Moon*, 513 F.3d 527, 542 (6th Cir. 2008) (citation and internal quotation marks omitted).

Nothing was double counted and no enhancements rested on "the same aspect of [petitioner's] conduct."

Accordingly, because there was no double counting in the PSR's calculation of petitioner's applicable guideline range, counsel did not render a prejudicial performance by failing to object to double counting at Bostic's sentencing.

## IV. Conclusion

Because petitioner's claims of ineffective assistance of counsel lack merit, his § 2255 motion to vacate will be **DENIED** and **DISMISSED**.

## IV. Certificate of Appealability

The Court must now consider whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal, since he may not appeal a final order in a § 2255 case to the Sixth Circuit unless "a circuit justice or judge issues a certificate of appealability." 28

---

[5] A separate method is used to calculate a guideline range for career offenders who are also convicted of a § 924(c) crime.  *See* USSG §4B1.1(c)(2); *United States v. Smith*, 2014 WL 4634102, *1 (6th Cir. Sept. 16, 2014).

U.S.C. §2253(c)(1). Issuance of a COA depends on whether petitioner has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits meets the requirements of § 2253(c) by showing jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For claims rejected on a procedural basis, a COA is warranted if jurists of reason would debate the correctness of the Court's procedural ruling. *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court has individually assessed petitioner's claims under the relevant standards and finds those claims do not deserve to proceed further because they are not viable in light of the governing law and jurists of reason would not conclude the disposition of those claims was debatable or wrong. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

A separate judgment will enter.

**ENTER:**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**